**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

STARLITA HARVEY,                    )       CASE NO. 5:12-CV-2026
                                    )
        Plaintiff,                  )
                                    )       MAGISTRATE JUDGE
        v.                          )       VECCHIARELLI
                                    )
CAROLYN W. COLVIN,                  )
        Acting Commissioner of Social )
        Security,                   )       **MEMORANDUM OPINION AND**
                                    )       **ORDER**
                Defendant.

        Plaintiff, Starlita Harvey ("Plaintiff"), challenges the final decision of Defendant,

Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner")[1], denying

her applications for Supplemental Security Income ("SSI") under Title XVI of the Social

Security Act ("Act"), 42 U.S.C. §§ 423, 1381(a), and Period of Disability ("POD") and

Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 416(i), 423.

This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the

undersigned United States Magistrate Judge pursuant to the consent of the parties

entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below,

the Commissioner's final decision is AFFIRMED.

## I.    PROCEDURAL HISTORY

        On October 10, 2007, Plaintiff filed her applications for SSI, POD and DIB,

alleging a disability onset date of January 15, 2005.  (Transcript ("Tr.") 14.)  The

---

[1]   On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of
Social Security.  She is automatically substituted as the defendant in this
case pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

application was denied initially and upon reconsideration, and Plaintiff requested a

hearing before an administrative law judge ("ALJ").  (*Id.*)  On November 20, 2010, an

ALJ held Plaintiff's hearing.  (*Id.*)  Plaintiff participated in the hearing, was represented

by counsel, and testified.  (*Id.*)  A vocational expert ("VE") also participated and testified.

(*Id.*.)  On January 14, 2011, the ALJ found Plaintiff not disabled.  (Tr. 23.)  On June 2,

2012, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision

became the Commissioner's final decision.  (Tr. 1.)

On August 6, 2012, Plaintiff filed her complaint to challenge the Commissioner's

final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc.

Nos. 18, 20, 21.)  Plaintiff argues that substantial evidence does not support the ALJ's

decision because: (1) the ALJ failed to explain the weight she assigned to the opinions

of agency consulting physicians; (2) at Step three of the sequential evaluation, the ALJ

did not consider whether Plaintiff's MS satisfied Listing 11.09; (3) the ALJ formulated

Plaintiff's residual functional capacity ("RFC") using a hypothetical that did not account

for mental limitations that the ALJ found at Step three; and (4) the ALJ erred at Step

Two of the sequential analysis in finding that Plaintiff's sleep apnea was non-severe

and failing to assign limitations to account for it in Plaintiff's RFC.

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Plaintiff was born on December 14, 1962 and was 42 years old on her alleged

disability onset date.  (Tr. 22.)  She had a post-secondary degree in secretarial science.

(Tr. 36.)  Plaintiff had past relevant work as a customer service representative and a

2

secretary.  (Tr. 21.)

**B.    Relevant Medical Evidence**

**1.    Treatment Notes**

On October 27, 2005, Plaintiff presented to the emergency room at Mercy Medical Center, complaining of right facial and arm weakness that had lasted several days.  (Tr. 380.)  Timothy Hagen, D.O., assessed Plaintiff, noting her obesity, facial weakness and droop, slower rapid movements of her right hand.  (*Id*.)  Dr. Hagen diagnosed her with an acute stroke and recommended that she begin an aspirin regimen.  (*Id*.)

On December 6, 2005, Plaintiff underwent a lumbar puncture at NeuroCare Center, Inc. ("NeuroCare"), in order to test her for Multiple Sclerosis ("MS").  (Tr. 379.)  On January 19, 2006, Dr. Hagen examined Plaintiff at NeuroCare.  (Tr. 377.)  He reviewed results of an MRI and her lumbar puncture, and diagnosed her with MS.  (*Id*.)  Dr. Hagen recommended that Plaintiff begin taking Avonex and, noting her complaints of loud snoring and gasping at night, undergo a polysomnogram.  On March 16, 2006, Plaintiff underwent a polysoomnogram that revealed REM-related obstructive sleep apnea with significant desaturations, hypopepnic events and arousals.  (Tr. 376.)  She complained of excessive daytime sleepiness.  (Tr. 459.)  NeuroCare physician Alok Bhagat, M.D., opined that Plaintiff would benefit from a CPAP titration, but concluded that her "Epworth sleepiness scale is way out of proportion to the severity of her REM-related sleep apnea." (*Id*.)  On March 17, 2006, a NeuroCare nurse instructed Plaintiff in the injection of her Avonex.  (Tr. 375.)

3

On May 3, 2006, agency consultant neurologist Parduman Singh, M.D., examined Plaintiff.  (Tr. 396-98.)  He noted her complaints of fatigue, loss of memory, difficulty with balance and speech, and upper extremity weakness.  (Tr. 396.)  Dr. Singh's examination revealed that Plaintiff was 5'5" tall and weighed 350 pounds.  (Tr. 397.)  He described her gait as "slightly wide-based due to marked obesity," but noted that Plaintiff was able to heel and toe stand, stand on one foot and squat.  (*Id.*)  Her range of motion in all joints was normal "given margin for severe obesity" and her range of motion in her lumbar spine was limited by her marked obesity.  (*Id.*)  Dr. Singh noted Plaintiff's complaints of extreme fatigue and opined that, if her diagnosis of MS was confirmed, "then she should be given the benefit of the doubt."  (*Id.*)  Dr. Singh opined that Plaintiff's capacity for lifting was moderately reduced "due to limitations from her medical problems as well as severe obesity and in part due to her balance problems if applicable (considering diagnosis of MS is confirmed)."  (Tr. 397-98.)

On November 16, 2006 agency consulting psychologist Michael J. Harvan, Ph. D., examined Plaintiff.  (Tr. 415-21.)   He opined that her immediate long-term memory functioning was poor, and that her short-term memory functioning was weak.  (Tr. 418.)  He noted that she made errors on the A's test, "indicating that she is likely to have difficulty focusing and concentrating."  (*Id.*)  Dr. Harvan diagnosed Plaintiff with adjustment disorder with depressed mood and assigned her a Global Assessment of Functioning ("GAF") score of 55.  (Tr. 420.)  Dr. Harvan concluded that Plaintiff was: mildly limited in the area of social adaption and interaction; moderately limited in the area of immediate long-term memory; mild to moderately limited in short term memory functioning; mild to moderately limited in her ability to focus attention and concentrate;

4

and moderately limited in her ability to manage the stress of an ordinary work environment.  (*Id*.)  He noted that, "without being properly medicated or without counseling help, it is likely that [Plaintiff] will have difficulty managing the stress of an ordinary work environment."  (*Id*.)

On January 30, 2008, agency consultant physician Paul F. Schaetzle examined Plaintiff, and noted abnormal grip strength in her left and right hands.  (Tr. 475.)  He opined that the results of the grip strength test were not reliable due to Plaintiff's "questionable maximal effort."  (Tr. 479.)  Dr. Schaetzle noted that Plaintiff's gait was "wide based . . . secondary to body habitus with increased lateral sway side to side." (*Id*.)

On February 12, 2008, Dr. Harvan examined Plaintiff a second time.  (Tr. 482-88.)  He diagnosed her with dysthmic disorder and assigned her a GAF score of 65. (Tr. 487.)  He opined that she was mildly impaired in her ability to understand and follow directions,  and to relate to others, including fellow workers and supervisors.  (*Id*.)  He concluded that Plaintiff was moderately impaired in her ability to maintain attention to perform simple or multi-step repetitive tasks, and to withstand the stress and pressures associated with day-to-day work activity.  (*Id*.)

On April 16, 2008, NeuroCare physician Jay P. Berke, M.D., examined Plaintiff, noting that she had not taken Avonex since January 2008 and had not experienced any "MS events."  (Tr. 519.)  Plaintiff reported that she had never had a CPAP titration, and complained of fatigue, excessive daytime sleepiness and memory issues.  (*Id*.)  Dr. Berke recommended that Plaintiff reinstitute Avonex, receive a CPAP titration and

undergo a sleep medicine review. (*Id.*)

On August 21, 2008, Dr. Bhagat noted that Plaintiff had not obtained a CPAP titration, that she was complaining of fatigue, and that she wanted to undergo surgery to treat her sleep apnea. (Tr. 613.) He encouraged her to lose weight and follow up with a surgeon for treatment of her sleep apnea. (*Id.*)

On October 21, 2009, Asmeen Bhatt, M.D., examined Plaintiff, who requested a letter to a state agency indicating that she was disabled and unable to work. (Tr. 573.) Dr. Bhatt requested records from Plaintiff's other physicians in order to assess her ability to work. (Tr. 573-74.) On April 14, 2010, Plaintiff complained to Dr. Bhatt of tingling numbness in her legs and arms. (Tr. 594.) He noted that her diabetes and MS were stable at that time, and that Plaintiff appeared to be gaining weight. (*Id.*) Dr. Bhatt noted that, "like her prior visits, [Plaintiff was] concerned about her Medicare, Social Security and disability filing." (*Id.*)

On January 7, 2010, NeuroCare physician Dr. Berke examined Plaintiff, noting that another physician had indicated that tracheotomy was the only surgical option for Plaintiff's sleep apnea. (Tr. 630.) Plaintiff reported that she "could not tolerate masks or machines." (*Id.*) Dr. Berke reported that Plaintiff had experienced no MS events and wished to resume Avonex, which she had not taken for over a year. (*Id.*)

## 2. Agency Reports

On May 17, 2006, agency consulting physician Walter Holbrook performed a physical RFC assessment. (Tr. 403-10.) He opined that Plaintiff was capable of: lifting 20 pounds occasionally and 10 pounds frequently; standing and/or walking and sitting

6

for about six hours in an eight-hour workday; occasionally climbing ramps and stairs; and never climbing ladders, ropes and scaffolds.  (Tr. 404-07.)

On November 25, 2006, agency consultant Caroline Lewin, Ph.D., performed a psychiatric review technique and mental RFC assessment.  (Tr. 423-36, 437-39.)  She diagnosed Plaintiff with adjustment disorder with depressed mood, and opined that Plaintiff was moderately limited in her activities of daily living; maintaining social functioning; and maintaining concentration, persistence and pace.  (Tr. 426, 433.)  In Section I of the mental RFC assessment, Dr. Lewin opined that Plaintiff was moderately limited in her ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting.  (Tr. 437-38.)  Dr. Lewin concluded that Plaintiff "remains able to handle basic instructions in a low stress work setting where concentration needed is only short term and relating is minimized."  (Tr. 439.)

On March 3, 2008, Dr. Lewin performed a second psychiatric review technique and mental RFC assessment.  (Tr. 489-92, 493-506.)  She assigned Plaintiff the same Section I limitations as in her previous psychiatric review technique and mental RFC assessments, with the exceptions of finding Plaintiff not significantly limited in her ability to work in coordination with others without being distracted by them, and mildly limited

7

in her activities of daily living, areas in which Dr. Lewin had previously assigned Plaintiff a moderate limitation.  (Tr. 489-90, 503.)  In Section III of the RFC assessment, Dr. Lewin opined that Plaintiff "presents as capable of sustaining concentration and persisting in simple, routine work duties" and "as capable of carrying out tasks where duties are relatively static and changes can be explained."  (Tr. 490.)

On March 20, 2008, agency consultant Gerald Klyop, M.D., performed a physical RFC assessment.  (Tr. 507-14.)  He opined that Plaintiff was limited to: occasionally lifting 20 pounds and frequently lifting 10 pounds; standing and/or walking for six hours in an eight-hour workday; sitting for less than six hours in an eight-hour workday, while periodically alternating between sitting and standing to relief pain or discomfort; occasionally climbing ramps and stairs; never climbing ladders, ropes and scaffolds; occasionally stooping, kneeling, crouching and crawling; and avoiding all exposure to extreme heat.  (Tr. 508-11.)

**C.  Hearing Testimony**

**1.  Plaintiff's Hearing Testimony**

At her November 10, 2010 administrative hearing, Plaintiff testified as follows:

Plaintiff had "a lot of asthma," which she treated with an inhaler that she used six or seven times each day.  (Tr. 41.)  Temperature extremes and dust exacerbated her breathing difficulties.  (Tr. 42.)  Plaintiff had suffered from depression for several years, and it kept her from wanting to be around friends, made her feel "really bad" about herself, and caused her to stay in her room and sleep all day.  (Tr. 44.)  She experienced depression three or four times each week.  (Tr. 47.)

8

Plaintiff's MS caused her to feel extremely fatigued.  (Tr. 45-46.)  She used a motorized cart for grocery shopping, and could "be fatigue[d] just pushing the button to drive the little thing around."  (Tr. 46.)  Plaintiff experienced weakness in her arms and legs.  (*Id*.)  None of Plaintiff's medications improved her stamina.  (*Id*.)  Plaintiff had difficulty with her memory, and experienced sharp pains in her hands and feet as a result of neuropathy caused by diabetes.  (Tr. 47.)  She was not able to write or type for long periods.  (Tr. 47-48.)

Plaintiff weighed 404 pounds.  (Tr. 50.)  She had tried numerous methods to lose weight, to no avail.  (*Id*.)  She was receiving psychological counseling to address her eating habits.  (*Id*.)  Plaintiff's physician had recommended that she use a CPAP machine several years before, but Plaintiff could not use it, explaining, "I have sinuses and they put it on my nose and I just felt like I couldn't breathe period.  I was gasping for air and I panicked."  (Tr. 51.)

### 2.    Vocational Expert's Hearing Testimony

The ALJ described a hypothetical person of Plaintiff's age and educational and vocational background, with the following limitations:

> [A]ble to lift no more than 20 pounds occasionally, 10 pounds frequently, able to stand or walk for six of eight hours, or to sit for less than six or eight hours but require[s] the ability to sit or stand at will.  The ability to work is further limited in such that they are able to climb stairs or ramps no more than occasionally and similarly the work should involve no more than occasional stooping, kneeling, crouching or crawling.
>
> The work should involve no climbing of ladders or scaffolds, no exposure to fumes, dust or environmental pollutants and the work in the environment should not involve extreme

9

> heat, extreme cold or humidity.  Furthermore, the work is
> limited to routine, repetitive tasks with easily explainable
> changes; and low stress work is defined as that which does
> not require conflict where the person rules or demands on
> others.

(Tr. 54-55.)  The VE opined that the hypothetical individual would not be able to perform

Plaintiff's past relevant work.  (Tr. 55.)  The VE testified, however, that, with the relevant

transferable skills from Plaintiff's past positions, the hypothetical individual could

perform work as an office clerk, clerical assistant/data entry clerk, or call center

operator.  (Tr. 56.)

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she

establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y*

*of Health & Human Servs., 667 F.2d 524 (6th Cir. 1981)*.  A claimant is considered

disabled when she cannot perform "substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result

in death or which has lasted or can be expected to last for a continuous period of not

less than 12 months."  20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled

by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott*

*v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate

that she is not currently engaged in "substantial gainful activity" at the time she seeks

disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant

must show that she suffers from a "severe impairment" in order to warrant a finding of

10

disability.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV.    SUMMARY OF COMMISSIONER'S DECISION

In his January 14, 2011 decision, the ALJ made the following findings of fact and conclusions of law:

1.    Plaintiff meets the insured status requirements of the Act through March 31, 2010.

2.    Plaintiff has not engaged in substantial gainful activity since January 15, 2005, the alleged onset date, through the date of the ALJ's decision.

3.    Plaintiff has the following impairments which are severe either singly or in combination: Multiple Sclerosis, diabetes, asthma, obesity and depression.

4.    Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.    Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b)

11

and 416.967(b).  Plaintiff has the RFC to lift or carry 20 pounds occasionally and 10 pounds frequently, to stand or walk for six hours in an eight-hour workday, and to sit for less than six hours in an eight-hour workday provided that she has the option to sit or stand at will.  She can perform work that requires no more than occasional climbing stairs or ramps, stooping, kneeling, crawling or crouching.  She can perform work that does not require climbing ladders or scaffolds, or exposure to extreme heat, extreme cold, humidity, fumes, dust, or environmental pollutants.  She can perform [a] job that involves routine, repetitive tasks with easily explainable changes and which is low stress defined as work that does not require resolving conflicts ro enforcing rules or demands on others.

6.  Plaintiff is unable to perform any past relevant work.

7.  Plaintiff was born on December 14, 1962 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.  Plaintiff has at least a high school education and is able to communicate in English.

9.  Plaintiff has acquired work skills from past relevant work.

10.  Considering Plaintiff's age, education, work experience and RFC, Plaintiff has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy.

11.  Plaintiff has not been under a disability, as defined in the Act, from January 15, 2005, through the date of the ALJ's decision.

(Tr. 16-23.)

## V.  LAW & ANALYSIS

### A.  Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in

12

the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ.  *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

**B.      Plaintiff's Assignments of Error**

Plaintiff argues that the ALJ erred in: (1) failing to explain the weight she assigned to the opinions of non-examining state agency physicians; (2) failing to consider Plaintiff's MS at Step three of the sequential evaluation; (3) formulating an RFC that was based on a hypothetical that did not include mental limitations found by the ALJ; and (4) determining that Plaintiff's sleep apnea was non-severe and failing to include limitations in Plaintiff's RFC to account for the fatigue that resulted from the condition.  This Court considers each of Plaintiff's arguments in turn.

13

**1.     The Opinions of the Non-Examining Physicians**

Plaintiff contends that the ALJ erred in failing to discuss the weight she assigned to the opinions of agency consulting physicians Drs. Singh, Harvan and Lewin, and that this failure does not constitute harmless error because the opinions of these physicians contradicted the ALJ's calculation of Plaintiff's RFC.  The Commissioner responds that the opinions of these physicians did not contradict the RFC determination and, thus, the ALJ did not err in failing to discuss these opinions.[2]

It is well established that an ALJ is not required to discuss each and every piece of evidence in the record for her decision to stand.  *See, e.g., Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004).  However, where the opinion of a medical source contradicts her RFC finding, an ALJ must explain why she did not include its limitations in her determination of a claimant's RFC.  *See, e.g., Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (Lioi, J.) ("In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis.").  Social Security Ruling 96-8p provides, "[t]he RFC assessment must always consider and address medical source

---

[2]     Plaintiff also argues that the ALJ erred in failing to explain the weight she assigned to the opinions of other state agency physicians – Drs. Holbrook, Scheatzle, and Klyop.  However, she does not explain either how the ALJ's failure to discuss the opinions of these physicians in detail was error, or how that error caused harm.  Accordingly, she has waived any argument with respect to these physicians. *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir.2006) ("It is well-established that 'issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir.1997)).

14

opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996).

Plaintiff argues that the RFC's restriction of Plaintiff to occasional climbing, stooping, kneeling, crawling and crouching contradicts Dr. Singh's finding that the range of motion in Plaintiff's lumbar spine was significantly limited by her obesity.  However, Plaintiff mischaracterizes Dr. Singh's findings.  A review of the record reveals that Dr. Singh did not describe Plaintiff's range of motion as "significantly" limited in any respect. Rather, he noted that Plaintiff had "marked abdominal obesity causing restrictions of [range of motion] in the lumbar spine."  (Tr. 397.)  He neither opined that the resulting restriction to her range of motion was significant, nor assigned her any limitations on that basis.  Accordingly, this Court cannot reasonably conclude that Dr. Singh's opinion contradicted the RFC, and, thus, the ALJ was not required to explain the weight he assigned to Dr. Singh's opinion.

Plaintiff's arguments based on the opinions of agency psychologists lack merit for similar reasons.  Plaintiff argues that the ALJ erred in failing to account for Dr. Harvan's opinion that Plaintiff was likely to experience increasing stress when required to interact with coworkers.  The record reveals, however, that Dr. Harvan's opinion regarding this limitation changed over time.  In November 2006, Dr. Harvan concluded that Plaintiff was "moderately limited" in her ability to manage the stress of working, particularly with respect to interacting with others:

> [W]ithout being properly medicated or without counseling help, it is likely that [Plaintiff] will have difficulty managing the stress of an ordinary work environment.  She tends to be

15

> more comfortable working alone than with others.  In a job
> setting in which she must interact with others, [Plaintiff] is
> likely to experience increasing stress in that work
> environment.

(Tr. 420.)  However, in February 2008, Dr. Harvan concluded that Plaintiff's ability to

relate to her coworkers and supervisors was only "mildly impaired."  (Tr. 487.)  Plaintiff

does not discuss this later opinion of Dr. Harvan.  Nor does she explain how the

restriction imposed by the ALJ – precluding Plaintiff from positions that would require

her to resolve conflicts, enforce rules or impose demands on others – contradicts Dr.

Harvan's conclusion that Plaintiff was mildly limited in her ability to interact with others.

Accordingly, the ALJ did not err in failing to discuss Dr. Harvan's opinion in his decision.

Plaintiff's arguments with respect to Dr. Lewin's opinions arise out of the

limitations Dr. Lewin assigned to Plaintiff in Section I of each of the mental RFC

assessments she performed.  Specifically, Plaintiff notes that, in each assessment, Dr.

Lewin determined that she was moderately limited in her ability to complete a complete

a normal workday and workweek, to perform at a consistent pace, and to get along with

coworkers or peers.  However, Dr. Lewin made these findings in Section I of the mental

RFC assessments.  (Tr. 437, 489.)  The agency's Program Operations Manual System

("POMS"), the operational reference used by agency staff to conduct the agency's daily

business, provides that "Section I is merely a worksheet to aid in deciding the presence

and degree of functional limitations and the adequacy of documentation and does not

constitute the RFC assessment."  POMS DI 24510.060(B)(2)(a).[3]  Rather, Section III "is

---

[3]      The POMS is available at:
https://secure.ssa.gov/apps10/poms.nsf/Home?readform (last visited Apr.
4, 2013).

for recording the mental RFC determination.  It is in this section that the actual mental RFC assessment is recorded."  POMS DI 24510.060(B)(4)(a).  "While these administrative interpretations [POMS] are not products of formal rulemaking, they nevertheless warrant respect . . . "  *Washington Dep't of Soc. Servs. v. Keffeler*, 537 U.S. 371, 385 (2003).  This Court has acknowledged that "Section I of the mental assessment is merely a worksheet that does not constitute the RFC assessment."  *Coleman v. Astrue*, No. 3:10-cv-464, 2010 WL 4955718, *7 (N.D. Ohio Nov. 18, 2010) (White, Mag. J.); *see also Velez v. Comm'r of Soc. Sec.*, NO. 1:09-cv-715, 2010 WL 1487599, *6 (N.D. Ohio Mar. 26, 2010) (Gallas, M.J.) ("In general . . . the ALJ is not required to include the findings in Section I in formulating residual functional capacity.").

In Section III of her March 2008 mental RFC assessment, Dr. Lewin concluded that Plaintiff "can interact occasionally in situations that do not require resolving conflict or persuading others to follow demands."  (Tr. 491.)  This limitation is nearly identical to the limitation assigned by the ALJ in her calculation of Plaintiff's RFC.  Accordingly, Dr. Harvan's opinion regarding Plaintiff's mental RFC does not contradict the ALJ's determination of Plaintiff's RFC and, thus, the ALJ's failure to discuss that opinion does not constitute error.

### 2. The ALJ's Omission of MS at Step three

Plaintiff contends that the ALJ erred when she failed to consider whether Plaintiff's MS satisfied the requirements of Listing 11.09(C) at step three of the sequential analysis.  The Commissioner argues that Harvey's argument lacks merit because Harvey cannot demonstrate that she meets the requirements of the Listing.

17

Under Listing 11.09(C), MS is a disabling impairment when the claimant demonstrates "significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.09(C).[4]

It is undisputed that Dr. Hagen diagnosed Plaintiff with MS, and the record reflects that she had received occasional treatment for the disease since her diagnosis. There is also no dispute that the ALJ considered listings other than Listing 11.09(C) at step three of her analysis.  However, this Court concludes that any error in this omission was harmless error.  Although federal courts cautiously apply the harmless error analysis in the context of administrative review, this Court has concluded that the analysis is appropriate where, "'based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.'" *Hufstetler v. Comm'r of Soc. Sec.*, No. 1:10-CV-1196, 2011 WL 2461339 * 10 (N.D. Ohio June 17, 2011) (White, Mag. J.) (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)); *see also Darabed v. Astrue*, No. 1:10-CV-2626, 2011 WL 7456148, *6 (NM.D. Ohio Dec. 6, 2011) (Burke, Mag. J.) ("Application of harmless error may be

---

[4]    A claimant can satisfy the requirements of Listing 11.09 under subsections (A) and (B) as well.  These subsections require a claimant to demonstrate disorganization of motor function or visual or mental impairments.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.09(A)-(B). Plaintiff, however, does not argue that she satisfies the requirements of Listing 11.09 under these subsections.

18

appropriate where a review of the material that the ALJ did consider leads to the conclusion that no reasonable fact finder, following the correct procedure, could have resolved the factual matter in another manner.")

Here, although the ALJ did not specifically cite to Plaintiff's MS at step three of the sequential analysis, she did so when analyzing Plaintiff's RFC.  The ALJ acknowledged Plaintiff's allegations that her MS caused multiple symptoms, including muscle weakness, pain in her extremities and loss of dexterity.  (Tr. 19.)  However, the ALJ also noted the lack of symptoms in the record to support Plaintiff's claim that her MS was disabling:

> Neurologically, Dr. Scheatzle reported that her cranial nerves II-XII were grossly intact, and no focal neurological signs, atrophy or muscle tremors were observed during the evaluation process.  The examination also revealed normal shoulder and hip strength.  However, Dr. Scheatzle noted that although [Plaintiff] appears to have had some grip weakness, it appears that she put "questionable maximum effort" during the grip strength test.
>
> *  *  *
>
> The progress notes further revealed that [Plainitff's] diabetes was well controlled and that her MS was stable at the time [of an April 14, 2010 examination].
>
> *  *  *
>
> Treatment notes of Dr. Alok Bhagat dated August 21, 2008 show[] that [Plaintiff's] MS was at the time in remission with the use of Avonex . . .  Likewise, a more recent follow up treatment note from Jay Berke dated January 7, 2010 revealed that [Plaintiff] reported she had no MS events and would wish to continue Avonex which she had not attempted to take for over a year.

(Tr. 19-20.)  Further, the ALJ determined that Plaintiff was not credible with respect to

the severity of her symptoms, noting that, despite her claims of disabling conditions,

"overall, [Plaintiff] has stable [MS], well-controlled diabetes and asthma, as well as

untreated depression and apnea" and that "[a] lack of extensive treatment suggests that

her impairments are not as severe as she alleged . . . None of the medical evidence

corroborated [Plaintiff's] allegation about . . . the extensive medical intervention she

required."  (Tr. 20-21.)

> The ALJ's analysis regarding the effect of Plaintiff's MS on her RFC would be
sufficient to support a finding that Plaintiff did not satisfy the requirements of Listing
11.09(C).  The ALJ's discussion of Plaintiff's MS reflects a lack of evidence that she
experienced the fatigue resulting from nervous system dysfunction that is necessary to
satisfy the Listing that Plaintiff alleges as the basis for error in this context.  Accordingly,
to the extent that the ALJ erred in failing to specifically address Listing 11.09(C) at step
three of her analysis, the Court is confident that no reasonable fact finder would have
resolved this issue differently.  Accordingly, Plaintiff's argument presents no basis for
remand in this case.

### 3.    ALJ's Hypothetical and Plaintiff's Mental Limitations

> Plaintiff argues that the ALJ posited a hypothetical to the VE that did not include
restrictions addressing Plaintiff's mental limitations.  Plaintiff's notes that, in her
decision, the ALJ concluded that Plaintiff had moderate difficulties with concentration,
persistence and pace.  According to Plaintiff, because the ALJ's hypothetical did not
include restrictions addressing these limitations, the ALJ erred in relying on the
hypothetical to determine Plaintiff's RFC.

> At step three of the sequential analysis, the ALJ determined that Plaintiff had

"moderate difficulties" in sustaining concentration, persistence or pace.  (Tr. 17.)  The ALJ assigned Plaintiff the following mental restrictions in her RFC:

> She can perform job[s] that involve routine, repetitive tasks with easily explainable changes, and which [are] low stress[,] defined as work that does not require resolving conflicts or enforcing rules or demands on others.

(Tr. 18.)  Plaintiff cites to *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010), to support her contention that the ALJ's hypothetical – and RFC – did not sufficiently address her moderate difficulties in concentration, persistence and pace. Plaintiff's argument is not well taken, as *Ealy* is distinguishable from this case.

In *Ealy*, the record showed that the claimant had a limited ability to maintain attention over time, even when performing simple, repetitive tasks.  *Ealy*, 594 F.3d at 516.  Specifically, a state agency psychological consultant limited the claimant's ability to sustain attention to complete simple repetitive tasks to "[two-hour] segments over an eight-hour day where speed was not critical."  *Id.*  The ALJ, however, limited the claimant only to simple, repetitive tasks without any additional time-based limitations. Accordingly, the Sixth Circuit found that the ALJ failed to capture the claimant's limitations in concentration, persistence, and pace adequately.  *Id.*

*Ealy* undoubtedly stands for the proposition that an ALJ's hypothetical to a VE must adequately describe a claimant's limitations in order to serve as substantial evidence in support of the ALJ's conclusions.  *Id.* at 517.  However, *Ealy*  "does not require further limitations in addition to limiting a claimant to 'simple, repetitive tasks' for every individual found to have moderate difficulties in concentration, persistence, or pace."  *Jackson v. Comm'r of Soc. Sec.*, No. 1:10-cv-763, 2011 WL 4943966, at *4

21

(N.D. Ohio Oct. 18, 2011) (Boyko, J.).  Rather, "*Ealy* stands for a limited, fact-based[] ruling in which the claimant's particular moderate limitations required additional speed- and pace-based restrictions."  *Id.* at 4.

Here, the record does not support Plaintiff's contention that, because the ALJ found her to be moderately limited in concentration, persistence and pace, the ALJ was required to incorporate speed- and pace-based restrictions into her hypothetical to the VE.  Rather, the record reflects that, although the ALJ did find Plaintiff to be moderately limited in this area, Dr. Lewin concluded that Plaintiff was "capable of sustaining concentration and persisting in simple, routine work duties."  (Tr. 491.)  Plaintiff has not pointed to evidence in the record contradicting Dr. Lewin's conclusion on this issue. Accordingly, the record supports the conclusion that Plaintiff's particular moderate limitations did not require restrictions in addition to those assigned by the ALJ and, thus, *Ealy* does not require remand in this case.

### 4.	The ALJ's Analysis at Step Two

Plaintiff argues that the ALJ erred in concluding, at step two of the sequential analysis, that her sleep apnea was nonsevere and by failing to include limitations that accommodated the fatigue she experienced as a result of the condition. Plaintiff's arguments are not well taken.

Although the determination of severity at the second step of a disability analysis is a *de minimis* hurdle in the disability determination process, *see Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988), the goal of the test is to screen out totally groundless claims, *see Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir.1985).

22

Once an ALJ determines that a claimant suffers a severe impairment at step two of his analysis, the analysis proceeds to step three; accordingly, any failure to identify other impairments or combinations of impairments as severe would be only harmless error because step two would be cleared.  *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (citing *Maziars v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.").  All of a claimant's impairments, severe and not severe, must be considered at every subsequent step of the sequential evaluation process.  *See* 20 C.F.R. § 404.1545(e).

Here, at step two, the ALJ determined that Plaintiff's sleep apnea was a nonsevere impairment.  (Tr. 16.)  However, she found that Plaintiff's diabetes, MS, asthma, obesity and depression constituted severe impairments.  (*Id.*)  Upon the ALJ's finding of these severe impairments, Plaintiff cleared step two of the disability analysis. *See Anthony*, 266 F. App'x at 457.  Accordingly, to the extent that the ALJ erred in finding that Plaintiff's sleep apnea was not a severe impairment, any error is harmless.

Plaintiff's argument that the ALJ erred in failing to include limitations based on Plaintiff's fatigue also lacks merit, as substantial evidence supports the ALJ's decision not to do so.  The ALJ determined that Plaintiff's complaints regarding the severity of her symptoms – including the fatigue that resulted from her sleep apnea – were not credible because Plaintiff failed to comply with the advice of her physicians and

23

received only conservative medical treatment:

> With respect to medical treatment, [Plaintiff] did not receive treatment for her alleged depression, nor did she follow the advice of her doctors in order to lose her weight . . . . [Plaintiff] did not have the tracheotomy surgical procedure as recommended by Dr. Bogdan, nor did she show any interest in using [the] CPAC machine or mask.  A lack of extensive medical treatment suggests that her impairment/limitations are not as severe as she alleged.

(Tr. 20.)  Plaintiff does not challenge the ALJ's credibility determination, to which this Court affords considerable deference.  *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).  Accordingly, Plaintiff's argument presents no basis for remand in this case.

## VI.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: April 13, 2013

24